IDA FLEMING, A. H. MONTIETH AND J. A. JONES, APPELLANTS, v. MAUDE E. FONES, RESPONDENT.—91 S. W. (2d) 208.

Springfield Court of Appeals.   March 3, 1936.

· *R. A. Pearson* and *Geo. P. Lang* for appellants.

*Emerson Foulke, A. E. Spencer, Jr.,* and *A. E. Spencer* for respondent.

ALLEN, P. J.—This is an action in mandamus, and was instituted on the 28th day of November, 1934, in the Circuit Court of Jasper County.

The petitioners were Ida Fleming, A. H. Montieth and J. A. Jones, Appellants, v. Maude E. Fones, the City Clerk of Joplin, respondent. The petition prayed for a writ of mandamus against respondent, requiring her as city clerk of Joplin, to show her examination of the recall petition, for such election, including the cancelled and alleged illegally withdrawn names to said petition.

The petition of appellants, for the removal of A. C. Maher, as mayor of said city of Joplin, stated as grounds therefor "that as such officer he has sought to assume authority and dictate administration outside the authority of his office, as in the instance of the Park Board Supervision. He has discharged faithful and experienced employees without hearing or just cause for wholly political ends, as instance fireman, whose pension rights were at the point of maturing, and to make places for payment of political obligations. He has increased the tax rates, added to the pay rolls and current expenses of city administration, in face of campaign promises to reduce them, and seeks to increase the burdens of municipal taxes at a time the business men of the city are least able to carry on, and is committed in general to a self-important, dictatorial and oppressive course in the conduct of municipal affairs." And that the said clerk certified said petition as insufficient in number of signers, the required number as computed at the last preceding election at which a mayor was elected, being 1766, or twenty per cent of such mayoralty vote.

That thereafter, and within ten days from said certification, amended petitions in like form, signed by qualified voters, and duly verified, were filed with said city clerk, and upon examination and comparison, were by said clerk declared insufficient, and by her certified as containing only 1564 names of qualified and registered voters; and further alleged that said respondent, clerk, withdrew and cancelled from said recall petition the names of alleged, competent, registered and qualified voters, to the number of 202.

It is not alleged that these withdrawal slips were not in fact signed by the persons whose names appeared thereon, but it is alleged that said withdrawal slips were unverified and unacknowledged or sworn to in the manner of the recall petition, or in any manner by the purported signers or any one for them, and that they were not offered to or received by the clerk from any signer in person, but were received from other persons, without any showing of right or verified authority to file the same.

It is also alleged that the manner of accumulating the withdrawal slips was illegal and contrary to the provisions of the city charter, and that the members of the police force and fire department using

the equipment and supplies of the city, contributed their time, services and official character in circulating the slips and soliciting signers, so as to obstruct and defeat such recall petition, in the interest of the officer petitioned against.

It is also alleged that the respondent clerk. arbitrarily and without right, followed the practice of striking off names from the petition for the sole reason that the signer appeared on the petition by initials and appeared registered by full name or *vice versa*, and also cancelled signatures where the residence address appeared different from the registered address, although such signer was registered for the same voting district as signed. How many signatures were affected by this allegation is not stated.

The general allegation of the petition that the clerk acted in an erroneous, arbitrary, illegal and unauthorized manner must be held limited by the specific allegations following this statement, in and by which the petitioners undertook to state how the clerk did act.

The trial court sustained respondent's demurrer to this petition, and the case is here on appeal by plaintiffs, appellants.

The statute controlling the recall of elective officers in the city of Joplin, a city of the second class, is Section 6526, Revised Statutes of Missouri, 1929; 8 Mo. Stat. Ann., page 5504, which provides that a petition for recall must be signed by twenty per cent of the entire vote cast for mayor, at the last preceding general election of such city, which provision it is urged by respondent, means that the petition must be signed by then competent and qualified voters of the city, to a number equal to said twenty per cent, in order to comply with this requirement; and that to make a citizen a competent signer of the petition he must not only be a qualified voter, under the laws of the State, but must be properly registered in the precinct of the city in which he lives at the. time of the signing. of the petition, and that his proper name must appear upon the registration books.

The statute further provides that within ten days from the date of filing of such petition "The city clerk shall examine said petition, and from the list of registered voters of the city ascertain whether or not said petition is signed by the requisite number of qualified voters; the clerk shall attach to such petition his· certificate showing the result of such examination. If by the clerk's certificate, the petition is shown to be insufficient, it may be amended within ten days from the date of such certificate. The clerk shall, within five days after such amendment is filed by him, make a like examination and *if his certificate shall show same to be insufficient*, it shall be returned to the person filing same, without prejudice, however, to the filing. of a new petition to the same effect. If the petition is shown to be sufficient by the certificate of the clerk, he shall submit the same to the council without delay and the council shall immediately order and

fix a date for holding an election to determine whether or not the officer against whom the petition is filed, shall be removed."

It is contended by respondent that the duties imposed upon the clerk, by the foregoing statute, 6526, Revised Statutes of Missouri, 1929, are *quasi*-judicial, and not merely ministerial, and that under the allegations of the petition mandamus will not lie to coerce the judgment of the clerk in the performance of duties which require the exercise of discretion and judgment.

It is further contended that the right of signers to a petition for recall or similar petitions under like statutes, to withdraw their names is well settled in this State, provided that this is done before the city clerk certifies as to the sufficiency of the petition.

And, it is further contended that the petition filed by relators is subject to demurrer, because it does not contain an averment that the persons signing the petition for recall as qualified voters, were shown to be such by the list of registered voters of the city, which the statute requires as a necessary prerequisite to make them qualified petitioners for recall.

The procedure for recall of elective officers of cities of the second class is statutory, which provisions are conditions precedent to the right to attempt such recall. They are contained in Section 6526, Revised Statutes of Missouri, 1929, and are as follows: When a petition is filed therefor, the statute requires that within ten days "the city clerk shall examine said petition, and from the list of registered voters of the city hereinafter mentioned, ascertain whether or not said petition is signed by the requisite number of qualified voters." The clerk of the city is required by certificate to show the result of such examination and if the petition is shown to be insufficient it may be amended within ten days from the date of the clerk's certificate to that effect. If amended the clerk, within five days after such amendment is filed with him, shall make like examination and again make his certificate of the result. If the certificate shall show these petitions to be insufficient, same shall be returned to the person filing the same without prejudice, however, to the filing of a new petition to the same effect."

It is alleged in the petition that the city clerk withdrew and cancelled from the recall petition the names of competent, registered and qualified voters to the number of 202; that persons whose names appear as qualified signers on the recall petition requested withdrawal therefrom of the purported signer, and that the clerk withdrew and cancelled said names on the recall petition. That they were not offered to or received by the clerk, from any signer in person, but were received from persons other than such signer without any showing of right or verified authority to file same.

The section providing for recall of elective officers does not contain

any express provision for the withdrawal of signatures, however this court, with other courts in this State has decided that this right of withdrawal does exist.

The case of Dagley v. McIndoe, 190 Mo. App. 166, 176 S. W. 243, was a proceeding in mandamus against the city officers seeking to force the city council of Joplin, to pass a specified ordinance to call a special election for the purpose of passing such ordinance by a vote of the people under the initiative plan contained in the charter. The provision of the charter relating to ordinances passed by initiative of the voters is set out in the opinion at page 173 of 190 Mo. App., supra. The question of the right of signers of the petition under the initiative sections was directly involved and decided, with the holding that any elector who had signed the petition could withdraw his name therefrom after the same had been filed with the city clerk but before the clerk had made his certificate to the city council.

In the Dagley case, supra, Judge FARRINGTON at page 176 of 190 Mo. App. said:

"As has been pointed out, the statute is most liberal in permitting the filing of such petitions for the passage of ordinances and amendment to such petitions and contains no express prohibition against the withdrawal of a signer before the petition is acted on; and we can see no good reason for placing a strict construction on the statute, with respect to withdrawals, in the face of a liberal enactment as to signers."

At the conclusion of the opinion, Judge FARRINGTON, on page 180 of the same case, further said:

"We hold that the Legislature clearly intended that a petition filed to pass an ordinance by initiative must contain fifteen per cent of the qualified electors when it is finally certified up to the council for action thereon, and that there is no bar on a petitioner who voluntarily signed from voluntarily withdrawing, provided he does so before the council has taken action or at least before the city clerk certifies a sufficient petition, and when he has so withdrawn he is not to be counted as a petitioner in ascertaining whether there is a required percentage of electors as signers. To hold otherwise, would, in our judgment, put a strict and unreasonable construction upon a statute which in other respects is liberal and open to all who bring themselves within its terms. The statute was not intended to be applied as a rule in a checker game where once your hand is off the man the move is final, but it is intended to give all who actually desire the passage of the proposed measure every opportunity to obtain the required number on a petition finally put up to the city council for action."

In the case of City of Sedalia ex rel. v. Montgomery, 109 Mo. App. 197, 88 S. W. 1014, being an action on special tax bills issued by the

city of Sedalia, one of the major questions involved was the right of persons signing a remonstrance to withdraw signatures therefrom, before the expiration of the ten day period allowed for filing of such remonstrance. On page 216 of 109 Mo. App. of which case it is said:

"This action established a time limit of ten days within which objection to the improvement might be announced, and until the expiration of such period, the power of the council did not become fixed or defined, and no sufficient reason has been assigned why a party in interest, who in the first instance joined the protestants, by attaching his name to the remonstrance thereafter, for reasons satisfactory to himself, might not recede from such position and ratify or assent to the proposed work. It would seem but logical and reasonable to permit qualified names to be subscribed to the remonstrance, until it was matured for action by the council, and it is difficult to perceive why right of more positive change of purpose should not be permitted a signer of the protest within the period appointed. No direct authority, other than hereinbefore alluded to, has been produced upon this branch of the controversy, but judicial rulings under analogous conditions are not lacking. The practical answer to the possible difficulties ensuing from the various situations so easily conceivable under such construction is that to all parties, whether favorable or hostile to the contemplated improvements, notice is imputed, that until the expiration of the statutory interval, the intention of the qualified property owners is not finally expressed, but until the ten days has ended may vary and is subject to reversal on reconsideration."

This case was certified to the Supreme Court and there reported in 227 Mo. 1, 127 S. W. 50. The opinion quotes the opinion of the St. Louis Court of Appeals and approves same and expressly approves the right to withdraw from the remonstrance in the following statement by Judge Fox:

"In our opinion the reasonable interpretation of the provisions of the statute is that the property owners have the full period in which to express their approval or disapproval. The signing of the remonstrance expresses their disapproval, but withdrawing it or withdrawing their names from it expresses their approval, and this they may do up to the last day."

In connection with this latter case it should be noted that there was no statutory provision for the withdrawal of signatures from the statutory remonstrance.

A reading of the applicable statute makes it clear that the duties imposed upon the respondent clerk are *quasi*-judicial and not merely ministerial. First the clerk must examine the petition, and then from the list of registered voters of the city must ascertain whether or not the petition is signed by the requisite number of qualified voters. The right of petitioners to withdraw having been settled by decisions cited

above, then another duty devolves upon the clerk, to-wit: When withdrawals are filed the clerk must determine whether they are genuine and bear the proper signatures of the signers of the petition, who purport to sign the withdrawals. This is just as much the duty of the clerk as is the duty mentioned in the statute, and it certainly calls for the exercise of just as much discretion and *quasi*-judicial determination. Therefore, under the decisions, in this State, cited by respondent, mandamus will not lie to coerce the judgment of the clerk in the performance of his duties.

The latest decision in this State on this question, is State ex rel. Johnson v. Regan, 76 S. W. (2d) 736. This was a proceeding in mandamus to compel the city clerk to certify as sufficient an original petition, proposing a certain ordinance in Kansas City, Missouri. The opinion sets out the various provisions of the charter of the city of Kansas City and in the course of the opinion it is stated that the nature of the duty to be performed by the city clerk of Kansas City is the same as the duty prescribed by Section 6508, Revised Statutes of Missouri, 1929, which is the initiative provision in the charter of cities of the second class, and substantially the same as the section on recall of elective officers in the same charter. The opinion states that the position taken by the relator "is to the effect that under the city charter the duties of the city clerk, in connection with his certification of initiative petitions, are simple ministerial duties which only empower him to examine the petition, add up the names of the signers, and certify the results of his findings without exercising any judgment or discretion as to whether or not the signers are electors of the city; whether or not any duplications exist; whether or not signatures are authentic; whether or not addresses are given for each signer or that any other of the charter requirements are complied with."

This position of the relators is then decided adversely to them in the following language:

"It has long been the settled law of this State that our courts will not interfere with either of the co-ordinate departments of government in the exercise of their powers, except to enforce ministerial acts required by law that leave to the officer no discretion. [State ex rel. Meier, 143 Mo. 439, 45 S. W. 306.]

"Legislative powers have been delegated to the city council of Kansas City, Missouri. The city charter provides for legislation by the people through initiative petition. The charter wisely provides that these petitions be signed by electors of the city for otherwise nonresidents could compel the city council to submit multitudinous laws to be passed upon by the electors of the city. To the avoidance of such a dilemma, the duty of determining the sufficiency is delegated to the city clerk. Mere ministerial power could not and would not avoid such dilemma. The very purpose of the law would be defeated

if the power delegated to the clerk was not *quasi*-judicial. We therefore conclude that the power delegated to the clerk by the city charter is *quasi*-judicial.

"It follows that for this court to interfere by granting relator's writ would be for this court to interfere with a co-ordinate department of government."

This opinion cites Dagley v. McIndoe, supra, in which case at page 175 of 190 Mo. App., this court disposed of a like question in the following language:

"It therefore becomes necessary for us to examine this statute and determine whether the calling of a special election is mandatory or authorized by the city council after it has refused as a legislative body to pass the proposed ordinance. To begin with, the petition is filed with the clerk. He is given ten days, not only to examine but to 'ascertain whether or not said petition is signed by the requisite number of registered electors;' so that the clerk is required to do more than a mere ministerial act of counting names on the petition; he must 'ascertain'—an act judicial or discretionary rather than arithmetical."

The petition herein does not charge any fraud on the part of the respondent. It merely sets out what the city clerk did in the matter of the withdrawal slips and charges, in substance, that she should not have received such slips or acted upon them. This is one of the matters imposed upon the respondent to determine. It is evident she did satisfy herself that the withdrawals were actually executed by the persons whose names appeared to be signed thereto, that they were genuine and that they were executed for the purpose of being filed with her. All of this was a *quasi*-judicial determination, just as much cast upon her as was the duty of comparing the petition with the list of registered voters of the city.

Appellants base their contention on this proposition upon the case of State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S. W. 327, which case was a proceeding to enjoin the Secretary of State and the Attorney General from accepting and filing a petition ordering the Workmen's Compensation Act to be referred to a vote of the people. The applicable statute is Chapter 62, Revised Statutes of Missouri, 1929. The statute (Section 10703) provides that the minimum number of petitioners either to an initiative or referendum petition, when filed with the Secretary of State, shall be five per cent of the legal voters in each of at least two-thirds of the congressional districts in the State. The sole question to be determined by the Secretary of State before he files a verified referendum petition is to ascertain whether such petition has been signed by the required number of voters in the proper number of districts. Manifestly this duty involves more of arithmetic than it does of discretion, either judicial or otherwise.

[State ex rel. v. Carter, 257 Mo. 52, 165 S. W. 773.] Such a petition purporting to be signed as provided by the above section by legal voters with their addresses, and supported by the statutory affidavit of the circulator, and filed in the office of the Secretary of State, is prima facie proof of the genuineness of such signatures. [Kaesser v. Becker, 295 Mo. 93, 243 S. W. 346.]

Section 10705 of the above article provides that if the Secretary of State shall refuse to accept and file any petitions for initiative or for the referendum, any citizen may apply, within ten days after such refusal, to the circuit court for a writ of mandamus, to compel him to do so. This fixes a statutory remedy in case of such refusal. Again, the same section provides that on showing that any petition filed is not legally sufficient, the court may enjoin the Secretary of State and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and number of such measure. All such suits shall be advanced on the court docket and heard and decided by the court as quickly as possible. The circuit court of Cole County is given jurisdiction of all such cases and it is also provided that either party may appeal to the Supreme Court within ten days after a decision is rendered. When such a petition is tendered to the Secretary of State he must take the signatures on the petition at their face value. He can only determine the number of signers and whether the petitions contain five per cent of the legal voters in at least two-thirds of the congressional districts of the State. This is not true in the case of recall petitions or initiative or referendum petitions in cities of the second class. All these proceedings are based upon statutes, but the terms of these statutes are not similar. In the case of cities of the second class, the city clerk is required to examine the petition, and then from the list of registered voters in the city, ascertain whether or not said petition is signed by the requisite number of qualified voters. This clearly means voters qualified under the general laws of the State and also duly and properly registered. The clerk does not and cannot rely upon the affidavits accompanying the petition, but must take the proper registered list and from a comparison of it with the petition and signatures make the requisite finding. This is made somewhat clear by the statements on pages 78 and 79 in the opinion in State ex rel. v. Carter, 257 Mo. 52, 165 S. W. 773. The right of withdrawal from petitions having been definitely determined by the courts of this State, it necessarily devolves upon the city clerk to also determine the genuineness and validity of each withdrawal.

The Westhues case, supra, presents a peculiar situation. On page 575 of the opinion the court definitely decides that the action was prematurely brought as against both the Attorney General and the Secretary of State and says that for that reason the judgment must

be reversed. The opinion then discusses questions no longer involved in that case, but said to be important in the case of future litigation over the same matter. After a considerable discussion the opinion then holds on page 584, that the emergency clause attached to the statute involved, did not save the measure from referendum. Again, on page 591, further referring to the emergency clause in the act, the court holds that the determination of the Legislature by giving the act immediate effect is not conclusive upon the courts, and they must decide, as a matter of law, whether the act so declared is a police act, within this constitutional provision. It is clearly a judicial question. Then follows a discussion, commencing on page 591, of the attempt to withdraw signatures from the petitions. The court states that only a few attempted withdrawals were filed before the time of the filing had expired. The opinion does then hold, that in a proceeding under the particular statute involved, a mere postal card or letter purporting to be signed by a signer of the petition is not sufficient.

In these cases the Secretary of State has nothing by which he can check. He must take the petition when properly verified, at their face value. However, in the case of the city clerk, he is not dependent upon the petitions, but must go to the registration books to determine whether each and every petitioner properly appears thereon. In the Westhues case the court held (page 594) that the words "legal voters" as used in Section 57 of the Constitution, does not mean registered voters. "Registration does not add to or detract from the qualifications of a voter." In the case of a proceeding like the one involved herein, registration is necessarily a part of the qualification for signers of the petition, because the statute requires the clerk to examine the petition, and then from the list of registered voters of the city ascertain whether or not the petition is signed by the requisite number of qualified voters.

A number of cases have been before the courts involving the right to withdraw from petitions of the character involved in this case, and the Westhues case has been cited, but it does not appear to have been accepted as an authority in cases of this kind.

Another allegation in the petition herein, not pursued in the assignment of errors, is that the manner and practice of accumulating said withdrawals was illegal and contrary to the express provision of the city charter, the members of the police force and the fire department, using the equipment and supplies of the city contributing for such purpose their time, services and official character, circulating such slips and soliciting signers so as to obstruct and defeat such recall petition, in the interest of the officer petitioned against.

So far as we have been able to ascertain there is no provision of the city charter making any such action by the officers and employees of the city illegal and improper. Any person has the right to circulate

such petition for recall, and may employ others to do or assist in doing such work. The motive of the circulators is immaterial. The statute simply furnishes a plan by which, when the signatures of the requisite number of qualified and registered voters are obtained, an election must be held upon the question of recalling any elective officer. There appears to be no statute prohibiting any of the city employees whether working under or appointed by the officer sought to be recalled, from taking any action for or in opposition to such recall. In the present case the petition seeks to recall the mayor, who appoints the police force and the members of the fire department. These latter employees must know or at least have reason to expect that with the recall and removal of the mayor there would come the removal of all or many members of the police and fire department. Yet the position of relators is that these employees are compelled to sit idly by and do or say nothing favoring or in opposition to the recall. No statute, relating to cities of the second class proscribes a city officer, whether elected or appointed, from having or expressing his interest in such an issue. The statute cited by appellant (6551) is not pertinent. It deals only with elections on franchise contracts, *et cetera.* The proceeding in the present case was not an election on any matter, and there was no candidate for office and the city officers did not contribute any labor to any person for election purposes. Whatever, they did in the matter at issue could be nothing more than an expression of an opinion whether the mayor should or should not be recalled from office, and such expression is not prohibited by the statutes, relating to cities of the second class.

Another allegation of the petition not pursued in the appellants' assignment of errors is that the city clerk arbitrarily and without right, followed the practice of striking off names from the recall petition for the sole reason that the signer appeared on the petition by initials and appeared registered by the full name, or *vice versa,* and also cancelled such signers where his or her residence address appeared different from the registered address.

The petition, however, does not state how many names were stricken under this alleged procedure, nor does it state that there were sufficient of such names to change the result as certified by the clerk. The clerk of cities of the second class, under the statute relating thereto, is empowered with the responsibility of determining the number of qualified voters found upon the petition for recall as well as the number of persons not qualified to vote, and not legal signers of the petition. Such are the questions the clerk is required to settle and determine. The language of this statutory specification demonstrates that the duty of the clerk in such cases is not a mere arithmetical process, but involves much more, and is therefore clearly a *quasi*-judicial function.

The statute in such cases, to-wit 6526, Revised Statutes of Missouri, 1929, is in part as follows:

"The holder of any elective office may be removed at any time . . . by the qualified voters of such city of the second class. The procedure to effect the removal of any such officer shall be as follows: 'The petition, signed by twenty per cent of the entire vote cast for mayor at the last preceding general election of such city demanding the removal of such officer, shall be filed with the city clerk, which petition shall contain a general statement of the ground or grounds for which the removal is sought. . . . Within ten days from the date of filing of such petition, the city clerk shall examine said petition, and from the list of registered voters of the city mentioned, ascertain whether or not said petition is signed by the requisite number of qualified voters, and he shall attach to said petition his certificate showing the result of said examination, stating the number of qualified voters found upon said petition, and the number of persons not qualified to vote. . . . If by the clerk's certificate the petition is shown to be insufficient, it may be amended within ten days from the date of said certificate. The clerk shall within five days after such amendment is filed with him, make a like examination and check off the names thereon, and if his certificate shall show the same to be insufficient it shall be returned to the person filing the same, without prejudice, however to the filing of a new petition to the same effect.''

We find that the statutory provisions hereinbefore appearing clearly establishes that under the requirements of the statute, the petition for recall in the present case, and also the petition as amended, within ten days from the date of the first certificate, having each been found by the clerk of the city of Joplin to have been under the law insufficient, the petition was properly returned to the persons filing same, without prejudice, and under the statute and the matters therein stated the same was subject to the filing of a new petition on the same subject.

In our opinion, the finding and judgment of the trial court, quashing the alternative writ herein and denying the peremptory writ, prayed for in appellants' petition, was for the right party, and therefore this case should be and is hereby affirmed. *Smith* and *Bailey, JJ.,* concur.