**MISSOURI FARM BUREAU FEDERATION, a corporation, C. R. Johnston, Taxpayers Survival Association, a corporation, Mel Hancock, Relators,**

v.

**James C. KIRKPATRICK, Secretary of State of the State of Missouri, Respondent.**

No. 62465.

Supreme Court of Missouri, En Banc.

Sept. 19, 1980.

Cullen Coil, Forrest P. Carson, Jefferson City, James L. Robinett, Jr., Springfield, for relators.

John Ashcroft, Atty. Gen., Christopher Lambrecht, Terry Allen, Asst. Attys. Gen., Jefferson City, for respondent.

Michael W. Lerner and Earl J. Engle, Kansas City, amicus curiae.

PER CURIAM:

This is mandamus.

According to a stipulation of facts, relators submitted a petition to respondent's office on July 4, 1980, containing 167,363 signatures supporting placement on the November 4, 1980, ballot of a constitutional

amendment to limit state and local government spending. On September 2, respondent received 1,377 affidavits from persons within the Sixth Congressional District requesting withdrawal of their signatures. Of these affidavits, respondent accepted 1,178, leaving an insufficient number of signatures to put the question on the November ballot.

On September 5, relators filed this action and on September 9, this Court issued an alternative writ in mandamus.

On September 11, 1980, the Sixth District Committee for Reasonable Taxation, Inc., a Missouri corporation, filed a motion for leave to intervene, or in the alternative for leave to participate amicus curiae in this case. Permission to appear amicus, file briefs and argue was granted. The motion to intervene is overruled by order filed this date.[1]

The sole question, as limited by the pleadings in this case, is: In order for the withdrawal of signatures to be effectual, was it necessary that the affidavits for withdrawal be filed with respondent on or before July 4, 1980?

Article III, § 50 of the Missouri Constitution provides:

Initiative petitions proposing amendments to the constitution shall be signed by eight per cent of the legal voters in each of two–thirds, of the congressional districts in the state, and petitions proposing laws shall be signed by five per cent of such voters. Every such petition shall be filed with the secretary of state not less than four months before the election and shall contain an enacting clause and the full text of the measure. Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith, and the enacting clause thereof shall be 'Be it resolved by the people of the state of Missouri that the Constitution be amended: '. Petitions for laws shall contain not more than one subject which shall be expressed clearly in the title, and the enacting clause thereof shall be 'Be it enacted by the people of the state of Missouri: '.

We hold that the statement of law in 42 Am.Jur.2d *Initiative and Referendum* § 31 (1969) is applicable:

In deciding whether signatures may be withdrawn from a petition, courts have sometimes considered when the petitioners may add signatures and held that signatures may be withdrawn at those times or at least at any time before the petitioners are foreclosed from adding signatures, but not thereafter because it would be unfair to permit withdrawals at a time when additions could not be made. Accordingly, where a statute prescribes a certain time within which a referendum petition may be filed, generally signers of the instrument may withdraw therefrom at any time during the period allowed for filing but not after the expiration of that period.

The point is well stated in *State ex rel. Harry v. Ice*, 207 Ind. 65, 191 N.E. 155, 156 (1934): "If * * * petitioners are permitted to withdraw their names after opportunity for supplying additional names, or filing new petitions, has passed, a very patent door to chicanery and fraud upon the voters and the community is provided." *See also City of Sedalia ex rel. Gilsonite Const. Co. v. Montgomery*, 109 Mo.App. 197, 88 S.W. 1014 (1904), aff'd 227 Mo. 9, 127 S.W. 50 (banc 1910); *Hoover v. Newton*, 193 S.W. 895 (Mo.App.1917); *State ex rel. Hopkins v. City of Independence*, 114 Kan. 837, 221 P. 245 (1923); *Commonwealth ex rel. Meredith v. Fife*, 288 Ky. 292, 156 S.W.2d 126 (1941); *State v. Trenton*, 58 N.J.L. 40,

---

**1.** On September 15, 1980, the day before hearing and final argument herein, the Sixth District Committee filed a purported "Brief of Intervenor" wherein the Committee alleged imperfections in the petitions themselves, issues at no time pleaded, briefed or answered by any party to this action. These issues being issues neither pleaded by the parties nor necessary to determination of the issues herein, the motion to intervene was overruled contemporaneously with the issuance of this opinion.

32 A. 685 (1895); *Board of Educ. v. Board of Educ.*, 112 Ohio St. 108, 146 N.E. 812 (1925); *Sharum v. City of Muskogee*, 43 Okl. 22, 141 P. 22 (1914); *State ex rel. Williams v. Bateman*, 60 S.D. 320, 244 N.W. 357 (1932); Annot., 27 A.L.R.2d 604 (1953); and Annot., 126 A.L.R. 1031 (1940).

We have considered the authorities cited by respondent and conclude that the alternative writ in mandamus should be made permanent insofar as it orders respondent to replace the 1,178 signatures heretofore removed from the petitions containing the names of signers in the Sixth Congressional District.

It is so ordered.

BARDGETT, C. J., and DONNELLY, SEILER, WELLIVER, MORGAN and HIGGINS, JJ., concur.

RENDLEN, J., dissents in separate dissenting opinion filed.

RENDLEN, Judge, dissenting.

I respectfully dissent. Relators gathered signatures on petitions submitted to respondent's office seeking to place a proposed constitutional amendment on the ballot at the November 4, 1980 General Election. Respondent, Secretary of State, testified that he assembled members of his staff and opened his office July the 4th to permit filing of the petitions on the last possible day,[1] so relators, "could get the publicity attached thereto."[2]

During the routine certification process that followed, respondent, on September 2, accepted affidavits of 1,178 persons in the Sixth Congressional District requesting withdrawal of their names from relators' petition. It should be emphasized that this occurred prior to completion of the certification process. With no Missouri statutory or decisional authority available for guidance, the majority holds: (1) withdrawal affidavits are permissible as a means of removing one's name as a subscriber to initiative petitions, but (2) the affidavits here may not be considered by respondent because they were filed after July 4, 1980. While I concur with the first of these holdings, inequities flowing from the second are immediately apparent. By restricting the right of *withdrawal* to the final date for *filing* petitions, relators or any group sponsoring an initiative drive are permitted to effectively foreclose a meaningful effort of those in doubt as to their views or who become convinced they were mistaken in signing, to withdraw their endorsement of the proposal under consideration. The chilling of any withdrawal effort is readily accomplished by the simple tactic employed by relator here, i. e., the petitions are held back until the deadline for filing. It is unrealistic to assume that signators in any substantial number would prepare and file withdrawal affidavits prior to July 4, 1980, for removal of their names from petitions *not yet filed*. The plain realities are that it requires an extensive plan and the concerted effort of many persons to successfully execute an initiative drive or a signators' withdrawal effort. Further, we should be mindful that the initiative process, which circumvents the regular legislative function of our elected representatives, permits direct legislation as well as constitutional change through a method lacking the usual checks and balances found in our bicameral legislative system. Permitting withdrawal subsequent to the filing of initiative petitions provides such a check by allowing adversary forces to play an effective role in the initiative process.

For these reasons and to more equitably balance the rights between opposing forces in such contests, I would allow a reasonable period (of at least 60 days), following the filing of any initiative petition in the Office of the Secretary of State, for filing withdrawal affidavits by disapproving signa-

1. Mo.Const., Art. III, § 50, requires filing of initiative petitions "not less than 4 months before the election."

2. Testimony of James Kirkpatrick, Secretary of State, taken in the evidentiary hearing before the Court on September 16, 1980.

tors.[3] This would encourage those invoking the initiative process to promptly file (instead of holding until the eleventh hour) petitions bearing signatures of voters as they are collected from the various districts to allow themselves opportunity to gather additional endorsements if withdrawal affidavits are filed.

Further, it should be noted that amicus curiae, the "Sixth District Committee for Reasonable Taxation, Inc.," petitioned to intervene alleging that the interest of those signators and other taxpayers who oppose certification "may not be adequately represented by the existing parties, namely by respondent Kirkpatrick" in this mandamus proceeding. In addition to making the alternative writ in part, permanent, the majority denied amicus permission to intervene. Supportive of its petition, the proposed intervenor filed its brief alleging, as a basis for denial of certification, that the "proposed amendment is substantively defective," in that (1) "the amendment contains more than one separate subject," (2) "the amendment would place a legislative act in the constitution," and (3) the petition "fails to set out all cognate inconsistent constitutional provisions being changed." A similar issue suggests itself from the fact that approximately 30% of the face of the petition bearing the voters' signatures is devoted to political argument, though such petitions are required by statute to meet a prescribed standard as to form. § 126.031, RSMo 1978.

In this original mandamus proceeding, it would not only have been within our authority to have allowed intervention, but it would have served the public interest in that substantive questions concerning the proposal's validity could have been resolved. In my view this Court, in the interest of justice and economy of judicial time, should have entertained questions raised by intervenor which impinge upon, though tangen-

tially, the principal matter contested between relator and respondent. Support for this position is found in *State ex rel. Wagner v. Fields*, 263 S.W. 853 (Mo.App.1924), a mandamus proceeding brought by individuals to compel certain governmental actions by the mayor and board of aldermen of a city. The court upon determining that relator's petition failed to specify with the requisite precision certain details concerning the action sought, l. c. 858, aptly stated,

It will not do to say that this feature cannot be considered because no mention thereof is made in respondents' return. For the court is not bound to take the case as presented, but may consider respondents' rights, the interest of third persons, and other matters in determining whether the writ shall go.

To like effect, this Court recognizing its broad discretion when mandamus is sought, stated in *State ex rel. Jacobsmeyer v. Thatcher*, 92 S.W.2d 640, 643 (Mo. banc 1936),

. . . even though a clear legal right has been established, the court must look to the large public interest concerned and should act in view of all existing facts and with due regard to the consequences which might result. This is true especially where, as here, the writ, if granted, would affect others not party to the suit, and where questions of grave importance are involved, or where the result might bring about confusion and disorder, or be unreasonable or injurious to the public; and in such cases the court should deny the writ, irrespective of the question of clear legal right of relator.

Clearly it was within our authority to have entertained intervenor's claims and I would not have left such questions hanging when an interested organization was before this Court as amicus, asking permission to intervene. For these reasons, I respectfully dissent.

---

**3.** As noted above, there is no specific statutory authority prescribing the final date for withdrawal of a subscriber's endorsement. However, the General Assembly has enacted S.B. No. 658 (codified as § 116.110, RSMo), effective January 1, 1981, to control such cases in the future. The legislature, recognizing the need for a reasonable opportunity to withdraw, has placed the deadline for filing withdrawal affidavits at the time when the certification process has been completed.