**SHAWNEE BEND SPECIAL ROAD DISTRICT "D", et al., Plaintiffs–Appellants,**

**v.**

**CAMDEN COUNTY COMMISSION, et al., Defendants–Respondents.**

No. 17806.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 22, 1992.

Marvin W. Opie, Crews, Gaw, Lutz & Opie, Tipton, for plaintiffs-appellants.

W. James Icenogle, Camden County Pros. Atty., Camdenton, Hamp Ford, David W. Walker, Knight, Ford, Wright, Atwill, Parshall & Baker, Columbia, for defendants-respondents.

MAUS, Judge.

This is an appeal from an order of the Circuit Court of Camden County, sitting as the County Commission of Camden County (County Commission) under § 49.220.[1] That order dissolved Shawnee Bend Special Road District "D" (Road District) pursuant to § 233.295. Because this court has no jurisdiction of a direct appeal from an order of the County Commission, this appeal must be dismissed. The following is the history of the case.

This case is before this court for the second time. A detailed statement of the initial background of the case is found in *Shawnee Bend Sp. R. Dist. v. Camden Cty.*, 800 S.W.2d 452 (Mo.App.1990). The following is a synopsis of the case as it has again reached this court.

In 1986 petitions were filed with the County Clerk seeking the dissolution of Road District pursuant to § 233.295. That section provides:

"Whenever a petition, signed by the owners of a majority of the acres of land, within a road district organized under the provisions of sections 233.170 to 233.315 shall be filed with the county commission of any county in which said district is situated, setting forth the name of the district and the number of acres owned by each signer of such petition and the whole number of acres in said district, the said county commission shall have power, if in its opinion the public good will be thereby advanced to disincorporate such road district. No such road district shall be disincorporated until notice be published in some newspaper published in the county where the same is situated for four weeks successively prior to the hearing of said petition."

The petitions filed in 1986 were not signed by the owners of a majority of the acres of land in the district. Additional petitions were filed in 1988. The 1988 petitions were not signed by the owners of a majority of the acres. However, when considered together, the 1986 and 1988 petitions were signed by the owners of a majority of the acres. A notice was published in accordance with § 233.295 that a public hearing would be held upon "the petition". Prior to the commencement of the public hearing, there were filed with the County Clerk affidavits executed by individuals and/or corporations owning property within the district withdrawing their names from the petitions that had been filed. Those individuals and/or corporations requesting such withdrawal constituted the owners of a majority of the acres within the district. Nevertheless, County Commission held the scheduled public hearing. At that time, Road District had an action pending against County Commission seeking divers forms of relief, including a monetary recovery. After taking the matter under advisement, County Commission issued an order dissolving Road District.

A petition for judicial review of that order was filed in the Circuit Court of Camden County. The circuit court entered its judgment upholding the action of County Commission.

Upon an appeal from the judgment of the circuit court, this court noted § 49.220:

"If a majority of the commissioners of the county commission shall be interested in any cause or proceeding pending before them, or related to either party, the same shall be certified with the original papers to the circuit court of the county, which shall proceed thereon to

1. Upon the enactment of the Mo. Const. of 1945, the County Commission was deprived of all judicial authority. *In re City of Duquesne, Missouri,* 313 S.W.2d 65 (Mo.App.1958), *aff'd, Petition to Incorporate The City of Duquesne,* 322 S.W.2d 857 (Mo.1959); *In re Weston Benefit Assessment, Etc.,* 294 S.W.2d 353 (Mo.App.1956). Article II, Section 1, provides:

"The powers of government shall be divided into three district departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy,

and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."

Neither party has questioned the constitutionality of § 49.220. That issue has not been preserved. This case must be decided upon the basis that § 49.220 is constitutional.

final judgment and determination in like manner as the county commission should have done."

This court held: "It was the duty of the circuit court to assume the role of the county commission and to proceed under § 233.295 as if it were the county commission." *Shawnee Bend,* at 459. The judgment of the circuit court was reversed and the cause was remanded with directions.

Upon remand, the Honorable James A. Franklin, Jr., of the Circuit Court of Camden County, caused a notice to be published to the effect that a public hearing would be held upon "the petition" of 1986 and 1988 on May 8, 1991. At that hearing, the County Clerk presented "the petition" consisting of the 1986 and 1988 petitions, together with the affidavits of withdrawal of signatures. It was recognized that if those withdrawals were permitted, the petition would not be signed by the owners of a majority of the acres. However, the County Clerk announced: "But—however, I was informed by the prosecuting attorney that there is no provision for withdrawal from this petition so my finding is that there was sufficient acreage for the hearing." The hearing proceeded. Acreage owners spoke in favor of and in opposition to the dissolution of Road District. After taking the matter under advisement, Judge Franklin issued an order directing the dissolution of Road District. That order included the following findings:

"6. That no authority is found by this Court in § 233.295 or elsewhere in Missouri law for the removal of signatures from petitions seeking dissolution or disincorporation of special road districts and that the request to remove signatures by affidavits were clearly made after the jurisdiction to determine the issues had been invoked.

7. That the Petition forms dated from December, 1986, through September, 1988, are in substantially the same and consistent form, seek but one result and conform with the requirements of § 233.-295 and therefore constitute one petition.

8. The attempted withdrawal of signatures by affidavit are without authority and nevertheless were attempted after jurisdiction attached under § 233.295 and are therefore without effect."

On appeal, Road District contends that order is erroneous for two basic reasons. First, the 1986 and 1988 petitions must be considered separately and the 1988 petition is not signed by the owners of a majority of the acres. Second, even if those petitions are considered together, because of the affidavits of withdrawal of signatures presented to the County Commission, "the petition" is not signed by the owners of a majority of the acres. It points out that portion of the mandate of this court which provided: "2. The circuit court shall determine whether or not the original papers include or constitute 'a petition' which meets the requirements of § 233.295." *Shawnee,* at 460. County Commission contends the 1986 and the 1988 petitions constitute "a petition" within the meaning of § 233.295 and that the affidavits of withdrawal were ineffective.

The parties cite authorities from other jurisdictions. The cases are collected in Annot., *Petition, Etc.—Signer's Withdrawal,* 27 A.L.R.2d 604 (1953). The parties fail to cite recent Missouri cases dealing with the withdrawal of signatures on petitions for Initiative and Referendum. Those cases seem relevant to the issues in this case. *Missouri Farm Bureau Federation v. Kirkpatrick,* 603 S.W.2d 947 (Mo. banc 1980), held that affidavits of withdrawal of signatures filed after the deadline for filing additional signatures on a petition proposing a constitutional amendment were ineffective. In reaching that decision, the Court said:

"We hold that the statement of law in 42 Am.Jur.2d *Initiative and Referendum* § 31 (1969) is applicable:

'In deciding whether signatures may be withdrawn from a petition, courts have sometimes considered when the petitioners may add signatures and held that signatures may be withdrawn at those times or at least at any time before the petitioners are foreclosed from adding signatures, but not thereafter because it would be unfair to permit withdrawals at a time when ad-

ditions could not be made. Accordingly, where a statute prescribes a certain time within which a referendum petition may be filed, generally signers of the instrument may withdraw therefrom at any time during the period allowed for filing but not after the expiration of that period.'" *Missouri Farm Bureau Federation,* at 948.

In *Rekart v. Kirkpatrick,* 639 S.W.2d 606 (Mo. banc 1982), the court held that § 116.-110, permitting withdrawal of signatures upon an initiative or referendum petition after the deadline for filing such a petition, was unconstitutional. In so holding, the court again cited with approval the above quotation from *American Jurisprudence 2d.* In referring to an argument that the initiative process inherently includes the right to withdraw, the Court made the following statement: "Respondents are correct to the extent that withdrawals of signatures may be accomplished *before the filing deadline." Rekart,* at 608. (Emphasis added.)

Both of those cases decided by the Supreme Court recognized the inherent right of one who signs a petition to timely withdraw his signature. That right has been expressly recognized in respect to an initiative petition for the passage of a city ordinance.

"As has been pointed out, the statute is most liberal in permitting the filing of petitions for the passage of ordinances and amendment to such petitions, and contains no express prohibition against the withdrawal of a signer before the petition is acted on; and we can see no good reason for placing a strict construction on the statute with respect to withdrawals, in the face of a liberal enactment as to signers." *Dagley v. McIndoe,* 190 Mo.App. 166, 176, 176 S.W. 243, 245 (1915).

It has also been expressly recognized in respect to a petition for the recall of a city official.

"The section providing for recall of elective officers does not contain any express provision for the withdrawal of signatures, however this court, with other courts in this state, has decided that this right of withdrawal does exist." *Fleming v. Fones,* 230 Mo.App. 1147, 1151–1152, 91 S.W.2d 208, 210 (1936).

The courts of the various states have not been uniform in determining when a withdrawal is untimely. For example, the stages of a proceeding after which a withdrawal has been determined to be untimely include the filing of the petition, or the determination of the sufficiency of the petition, or the final action upon the petition. See Annot., 27 A.L.R.2d 604, supra. Further, what stage will bar subsequent withdrawal of a signature, has been held to differ depending upon the subject matter and steps involved in a particular proceeding. In *Dagley v. McIndoe,* supra, the court was considering a withdrawal of signatures before an ordinance by initiative petition was certified by the city clerk. In holding such withdrawal effective, the court said:

"We hold that the Legislature clearly intended that a petition filed to pass an ordinance by initiative must contain 15 per cent of the qualified electors when it is finally certified up to the council for action thereon, and that there is no bar on a petitioner who voluntarily signed from voluntarily withdrawing, provided he does so before the council has taken action, or at least before the city clerk certifies a sufficient petition, and that, when he has so withdrawn, he is not to be counted as a petitioner in ascertaining whether there is the required percentage of electors as signers. To hold otherwise would, in our judgment, put a strict and unreasonable construction upon a statute, which in other respects is liberal and open to all who bring themselves within its terms. The statute was not intended to be applied as a rule in a checker game, where once your hand is off the man the move is final, but is intended to give all who actually desire the passage of the proposed measure every opportunity to obtain the required number on a petition finally put up to the city council for action." *Id.* 176 S.W. at 246–247.

For obvious reasons, where there is a deadline after which additional signatures may

not be added to a petition, withdrawal will not be permitted after that deadline. *Rekart v. Kirkpatrick*, supra; *Missouri Farm Bureau Federation v. Kirkpatrick*, supra. In declaring that limitation upon withdrawal, the court observed that in any event those opposing a proposed constitutional amendment will be afforded an opportunity to vote against the proposition. *Rekart v. Kirkpatrick*, supra. Other factors involved in a particular proceeding may establish the time within which withdrawal is timely. For example, § 233.295 permits a dissolution only upon a petition approved by the owners of a majority of the acres. That hearing could serve to provide information upon the merits of the issue not only for consideration by the County Commission, but by acreage owners attending the meeting. If acreage owners at such hearing or otherwise learn facts which cause them to change their mind, should they not be permitted to withdraw their signature before the County Commission takes final action?

Concerning Road District's second argument, which is interrelated with the first argument, *State ex rel. Upchurch v. Blunt*, 810 S.W.2d 515 (Mo. banc 1991) recognizes there is a limitation upon the period of time during which petitions may be circulated for signatures supporting a given proposition.

"Constitutional provisions relating to the period of time during which petitions may be circulated for signatures are clearly framed by reference to general elections and the periods between them." *Id.*, at 517.

Such a time limit is expressly prescribed by statute in respect to certain proceedings. For example, a petition for incorporation under § 72.130 shall be presented to the County Commission within 280 days after the first signature is affixed to the petition. § 72.132. Under § 77.655, a petition to recall a city official found to be insufficient may be amended within 10 days thereafter. Also see § 78.270. There is good reason for some limitation upon the period during which signatures may be affixed to separate documents and be considered as signatures on "a petition" supporting a given proposition. In the absence of a statutory limitation, that period should be a reasonable time based upon relevant factors such as the nature of the issue being submitted and the number of potential signatures.

However, the issues raised by the parties cannot be resolved in this case. Neither party has questioned the jurisdiction of this court. Nevertheless, it is the duty of this court to determine that issue sua sponte. *Nimmo v. Nimmo*, 616 S.W.2d 131 (Mo.App.1981). The right of appeal is purely statutory. *Lederer v. State, Dept. of Social Serv.*, 825 S.W.2d 858 (Mo.App.1992). The applicable statute, in relevant part, provides:

"Any party to a suit aggrieved by *any judgment of any trial court* in any civil cause ... may take his appeal to a court having appellate jurisdiction from ... any final judgment in the case...." § 512.020. (Emphasis added.)

The statute providing that the proceeding to dissolve Road District be certified to the circuit court reads as follows:

"If a majority of the commissioners of the county commission shall be interested in any cause or proceeding pending before them, or related to either party, the same shall be certified with the original papers to the circuit court of the county, which shall proceed thereon to final judgment and *determination in like manner as the county commission should have done.*" § 49.220. (Emphasis added.)

The statute providing for appeals from the County Commission reads as follows:

"Appeals from the decisions, findings and orders of county commissions shall be conducted under the provisions of chapter 536, RSMo." § 49.230.

Chapter 536 provides for judicial review of an administrative decision by a petition filed in the circuit court. This chapter is supplemented by Rule 100.

The action of Judge Franklin acting as the County Commission is an administrative decision. *In re City of Duquesne, Missouri*, supra; *In re Weston Benefit Assessment, Etc.*, 294 S.W.2d 353 (Mo.App. 1956); *State ex rel. Weston Special Benefit Assessment Road District of Platte County v. Maughmer*, 275 S.W.2d 385 (Mo.

App.1955). As such, it is subject to judicial review in the manner prescribed by law. Mo. Const. of 1945, art. V, § 18 (1976)—*Judicial Review of Action of Administrative Agencies—Scope of Review.* Cf. *State ex rel. Missouri Com'n, Etc. v. Lasky,* 622 S.W.2d 762 (Mo.App.1981); *Jarvis v. Director of Revenue,* 804 S.W.2d 22 (Mo. banc 1991). Section 49.230 follows that constitutional mandate. Cf. *State ex rel. Weston Special Benefit Assessment Road District of Platte County v. Maughmer,* supra.

■ The order of Judge Franklin, acting as the County Commission, was subject to judicial review upon a petition addressed to the Circuit Court of Camden County, sitting as a court, not as an administrative agency. Such a review is not rote. A meaningful review may be accorded by the assignment of a judge other than the judge who acted as the County Commission. There is no right of appeal to this court from an administrative decision of a judge of a circuit court acting as a county commission. Cf. *Bowman v. Greene County Com'n,* 732 S.W.2d 223 (Mo.App.1987). The appeal is dismissed.

MONTGOMERY, P.J., and PREWITT, J., concur.