**STATE of Missouri, Respondent,**

v.

**Russell SCHLEIERMACHER, Appellant.**

No. 78072.

Supreme Court of Missouri,
En Banc.

May 28, 1996.

---

Karl L. Madden, Jr., Moberly, for appellant.

Stephanie M. Charde, Assistant Prosecuting Attorney, Randolph County, Moberly, for respondent.

HOLSTEIN, Chief Justice.

Defendant Russell Schleiermacher was convicted of two counts of violating a full order of protection. § 455.085.8.[1] He was sentenced to three months in the county jail on one count and fined $250 on the other count. Defendant claims § 455.085.8 together with § 455.010 are unconstitutionally vague. In addition, he challenges the information and certain instructions given to the jury. This Court has jurisdiction. *Mo. Const. art. V, § 3.* Although the Court finds the statutes constitutional, because of instructional error and a faulty information as to one count, the convictions are reversed and the case remanded.

### I.

Defendant was charged with six counts of violating the order of protection. At trial, the state dismissed one count. A jury found defendant not guilty of three counts. However, he was convicted under counts II and III. The evidence offered in support of counts II and III is recited in a light most favorable to the jury verdict. *State v. Shurn,* 866 S.W.2d 447, 455 (Mo. banc 1993), *cert. denied* — U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

Defendant separated from his wife, Lorrie, on October 4, 1993. The two were divorced in March of the following year. Just after the separation, on October 18, Lorrie sought and obtained an *ex parte* order of protection pursuant to § 455.035. A full order of protection was entered November 2, 1993. The full order of protection provided in part, "[Defendant] shall not stalk, abuse, threaten to abuse, molest or disturb the peace of petitioner wherever petitioner may be...."

Prior to their separation, defendant and Lorrie's relationship had been deteriorating. On numerous occasions, defendant threatened to kill Lorrie, including an occasion when he put a gun to her head. In addition, he had threatened to and did try to take the couple's son, telling Lorrie that he could drop off the face of the earth and that she would never see the boy again. During the marriage, defendant had pushed Lorrie and had

locked her in the bathroom. When the children attempted to call for help, defendant pulled the telephone off the wall. These events precipitated her obtaining the order of protection. However, within a few days after the order was obtained, she witnessed defendant driving slowly by her house. These events frightened Lorrie.

Officer Stuck, of the Huntsville police department, observed the defendant driving down the street adjacent to Lorrie's residence on December 6, 1993. The officer noted nothing unusual about defendant's driving. On December 8, 1993, Lorrie's mother was on her way to Lorrie's residence at about 6:15 a.m. Lorrie's mother observed defendant parked in a vacant lot a half block from the residence. She confronted him. He claimed to be sitting in the lot so he could see his son. At least inferentially, the lot was close enough to Lorrie's residence that defendant could observe the child coming to or going from her residence.

### II.

The dispositive issue here is the propriety of the verdict directing instructions, designated instructions 6 and 7, given in support of counts II and III. Counts II and III of the information charged that defendant violated § 455.085 "by repeatedly driving by and lingering near [Lorrie's] residence ... at various times of the day and night" (count II) and "by lingering near [Lorrie's] residence by parking in a vacant lot up the street from [her] residence and sitting in his truck...." (count III). Both counts were charged as class A misdemeanors.

■ The class A offense of violating a full order of protection under the adult abuse law, as charged in this case, requires a finding that the defendant either abused or stalked the victim. Abuse may occur in a number of ways, either by assault, battery, coercion, harassment, sexual assault or unlawful imprisonment. § 455.010(1)(a)–(f). Stalking may occur either by repeatedly harassing another person or following with the intent of harassing another person. § 455.010(10). The facts in this case only

---

**1.** All references to statutes are to RSMo 1994   unless otherwise noted.

support a violation of the protective order through abuse or stalking by harassment.

Abuse by harassment is defined as follows:

"Abuse" includes but is not limited to the occurrence of any of the following acts . . .

. . . . .

(d) "Harassment", engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to another person and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner. Such conduct might include but is not limited to:

. . . . .

b. Peering in the window or lingering outside the residence of another; but does not include constitutionally protected activity.

§ 455.010(1).

When submitting the class A misdemeanor of violation of a full order of protection where the state relies on proof of abuse by harassment, the jury must be instructed that it shall find the defendant guilty if proved beyond a reasonable doubt (1) that a valid court order was in effect prohibiting defendant from abusing the victim, (2) that the order had been served on or read to the defendant, and (3) that defendant purposely or knowingly harassed the victim by engaging in a course of conduct involving more than one incident, which must be specifically described in the instruction, thereby causing substantial emotional distress to the victim. The word "harassed" must be defined in the instruction to mean to engage in a course of conduct directed at a specific person that causes substantial emotional distress and serves no legitimate purpose, and would cause a reasonable person to suffer substantial emotional distress. The course of conduct described may include following the victim to public places or peering in the window or lingering outside the victim's residence. *Compare* MAI–CR3d 319.40.

Stalking is also defined in the statute:

"Stalking" is when a person purposefully and repeatedly harasses or follows with the intent of harassing another person. As used in this subdivision, "harasses" means to engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person to suffer substantial emotional distress. As used in this subdivision, "course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct".

§ 455.010(10).

An instruction properly submitting the class A misdemeanor of violating an adult abuse order where the state relies on stalking by harassment[2] requires that the jury shall find the defendant guilty if it believes beyond a reasonable doubt (1) that a valid order was in effect prohibiting the defendant from stalking the victim, (2) that the order had been served on or read to the defendant, and (3) that the defendant repeatedly and purposely harassed the victim by engaging in a course of conduct, which must be specifically described in the instruction. The word "harassed" must be defined in the instruction to mean a course of conduct involving a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose directed at a specific person and serves no legitimate purpose and would cause a reasonable person to suffer substantial emotional distress. *Compare* MAI–CR3d 319.40.

Both instructions 6 and 7 purport to be patterned after MAI–CR3d 332.52 and provide in relevant part as follows:

### INSTRUCTION NO. 6

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

---

**2.** Stalking may occur by "repeatedly harassing or following." Here there was no evidence defendant followed Lorrie. The proper method of instructing where the evidence shows the defendant followed the victim is not addressed here.

First, that on or about November 2, 1993, the Circuit Court of Randolph County entered an order prohibiting defendant from stalking, abusing and threatening to abuse [Lorrie] wherever she may be, and

Second, that on November 3, 1993, the Randolph County Circuit Clerk's office presented a copy of that order to the defendant, and

Third, that on or about December 6, 1993, in the County of Randolph, State of Missouri, the defendant violated that order by repeatedly driving by and lingering near [Lorrie's] residence located at 103 West Mulberry, Huntsville, MO, at various times of the day and night, knowing that such conduct would cause alarm or distress to [Lorrie] and such conduct served no legitimate purpose.

then you will find the defendant guilty of violation of order of protection.

. . . . .

#### INSTRUCTION NO. 7

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 2, 1993, the Circuit Court of Randolph County entered an order prohibiting defendant from stalking, abusing and threatening to abuse [Lorrie] wherever she may be, and

Second, that on November 3, 1993, the Randolph County Circuit Clerk's office presented a copy of that order to the defendant, and

Third, that on or about December 8, 1993, in the County of Randolph, State of Missouri, the defendant violated that order by lingering near [Lorrie's] residence by parking in a vacant lot up the street from [Lorrie's] residence and sitting in his truck, knowing that such conduct would cause alarm or distress to [Lorrie] and such conduct served no legitimate purpose.

then you will find the defendant guilty of violation of order or protection.

■ As is readily apparent from reading the relevant portions of instructions No. 6 and No. 7, both are deficient in a number of respects, notwithstanding a superficial compliance with MAI–CR3d 332.52. Most nota-

bly, neither instruction required the jury to find defendant "harassed" his victim, as that term is defined in the statute. Specifically, the jury was not required to find in either instruction that the defendant engaged in a course of conduct that would cause a reasonable person substantial emotional distress. Our court of appeals has held that it is error to omit the word "serious" before "physical injury" in a felonious assault instruction because such omission changes the magnitude of the threatened injury that must be proven. *State v. Brokus,* 858 S.W.2d 298, 303 (Mo. App.1993). Similarly, an average layperson may well be misled as to the quality of emotional distress to which the victim must be exposed in order to reach a verdict of guilt by failure to use the qualifying word "substantial." Conduct that merely causes alarm or distress to the victim but which would not cause substantial emotional distress to a reasonable person does not qualify as harassment.

■ Second, both stalking and abusing by harassment require a culpable mental state. In the case of abuse by harassment, the course of conduct must be committed knowingly or purposely. Stalking by harassment requires that the course of conduct be committed purposely. The instructions, as given, only required that the jury find that the defendant knew his conduct would alarm or distress the victim. The instructions did not require a finding that the conduct itself was committed with the appropriate culpable mental state. *See § 562.016.*

■ Finally, instruction No. 7 does not hypothesize a "course of conduct" engaged in by the defendant as that phrase is defined under the abuse or stalking definitions of harassment. Instruction No. 7 hypothesizes only a single incident of parking in a vacant lot. To qualify as abuse by harassing, the instruction must hypothesize more than one incident. *§ 455.010(1)(d).* To qualify as stalking by harassing, the instruction must hypothesize repeated conduct or a series of acts. *§ 455.010(10).* The conduct hypothesized in instructions 6 and 7 might be conjoined to establish a harassing course of conduct. However, a single harassing act in

violation of an order is only punishable by civil contempt and is not punishable as a class A misdemeanor.

### III.

■ Among other issues raised necessary to answer before remanding the case is whether the evidence was sufficient to establish the class A offense of violating a full order of protection by abusing or stalking.

The evidence recited above shows that a valid full order of protection was in effect, and that the order was read to the defendant in open court. In addition, a jury could find from the evidence that the defendant engaged in a purposeful or knowing course of conduct by driving slowly past Lorrie's residence on various dates after the order was entered and by parking on a lot near her home on December 8th. This conduct was sufficient to establish that the defendant harassed Lorrie by engaging in a course of conduct involving more than one incident or a pattern of conduct composed of a series of acts serving no legitimate purpose, that such conduct caused Lorrie substantial emotional distress, that such conduct would cause a reasonable person substantial emotional distress and the conduct served no legitimate purpose. In this case, there was sufficient evidence to convict the defendant of violating the order by stalking or abusing Lorrie by means of harassment.

It is true that the incident described on December 6, 1993, did not involve "lingering," because defendant was not shown to have stopped or slowed his vehicle. In addition, the single incident does not qualify as a "course of conduct" under any definition. However, there were previous events of slowing or stopping and the incident of December 8, 1993, where defendant was seen in a nearby parking lot which, taken together, establish the necessary facts to support at least one count of violating the court's order by abusing or stalking by harassment "on or about December 6, 1993." [3]

### IV.

■ Because the issue is certain to arise on retrial, the Court must also address the constitutional challenge to § 455.085.8 which, taken together with § 455.010, makes it a crime to violate an order prohibiting harassment by "lingering outside" the residence of the protected party. Defendant argues that the words "lingering outside" are so vague as to fail to give notice of prohibited conduct and permits the arbitrary and discriminatory application of the law to citizens. Statutes are presumed to be constitutional and will be held otherwise only if they clearly contravene some constitutional provision. *State v. Young,* 695 S.W.2d 882, 883 (Mo. banc 1985).

■ Due process requires that a statute give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. . . ." *U.S. v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1994). Due process also requires that a statute speak with sufficient specificity and contain sufficient standards to prevent arbitrary and discriminatory enforcement. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). *See also State v. Stokely,* 842 S.W.2d 77, 80 (Mo. banc 1992). However, due process requires no more than that a statute convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Matter of Trapp,* 593 S.W.2d 193, 202 (Mo.1980), *appeal dismissed* 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840.

■ The challenged words are "lingering outside." In determining what the legislature intended, courts are constrained to take the statutory words in their plain, ordinary and usual sense. *Maudlin v. Lang,* 867 S.W.2d 514, 516 (Mo. banc 1993); *§ 1.090.* The verb "linger" means "to remain or wait long: be slow in parting or in quitting something: DELAY, LOITER, TARRY." Webster's Third New International Dictionary (1981). The noun "outside" has two

---

**3.** We do not address the question of whether the acquittal or dismissal of four of the six counts or the failure of count III to allege any offense precludes the state from relying on events prior to December 8, 1993, as part of the "course of conduct" which violated the court's order of protection. Those issues have not been raised on appeal.

potential dictionary meanings that may have been intended: "A place or region that is situated beyond an enclosure, boundary, or other limit, [or] an outer side or surface." *Id.* Thus, outside a residence may mean anywhere but inside the residence or it may mean directly touching the outer part of the residence. Words in a statute that have more than one meaning are to be given a reasonable reading rather than an absurd or strained reading. *David Ranken, Jr. Tech. Institute v. Boykins,* 816 S.W.2d 189, 192 (Mo. banc 1991). In addition, words are to be construed in a manner consistent with the legislative intent, giving meaning · to the words used within the context of the legislature's purpose in enacting the law. *Sullivan v. Carlisle,* 851 S.W.2d 510, 512 (Mo. banc 1993). Here the context is the adult abuse statute, a law designed to discourage and prevent domestic violence by limiting contact between members of a family or former residents of a household.

■ Given the purpose of the statute and context of the words, a person of ordinary understanding should know that the phrase "lingering outside of the residence" means stopping or slowing in proximity to the residence of a protected party so that the person engaging in the conduct is capable of monitoring those who come to or go from the residence in question. A word or phrase is not unconstitutionally vague merely because of some ambiguity. Ambiguous language may be defined and limited by the courts so as to survive a due process challenge. *State v. Ramsey,* 864 S.W.2d 320, 328 (Mo. banc 1993); *Bennett v. Owens–Corning Fiberglas Corp.,* 896 S.W.2d 464, 467 (Mo. banc 1995). Given the judicially limited definition adopted here, a statute criminalizing "lingering outside" the residence of another is not unduly vague. Because it cannot be said that the statute is so unclear that persons of common intelligence must guess at its meaning, the statute is not unconstitutional. *See Young,* 695 S.W.2d at 884.

## V.

■ Another issue certain to arise on retrial is the sufficiency of the information. No challenge was made to the sufficiency

prior to the verdict. Thus, the information will only ·be deemed ineffective if it does not by any reasonable construction charge the offense of which the defendant was convicted or prejudice the substantial rights of defendant to prepare a defense and plead former jeopardy in the event of acquittal. *State v. Parkhurst,* 845 S.W.2d 31, 35 (Mo. banc 1992). Both counts II and III fail to adequately allege the necessary culpable mental state. However, omission of a mental element from an information that is. otherwise complete is not so defective as to fail to charge an offense. *State v. Meanor,* 863 S.W.2d 884, 889 (Mo. banc 1993). The statutory section alleged to be violated is cited in count II. Count II alleges repeated acts of harassment "on or about" December 6, 1993. While the information is no model, the allegations of count II are sufficient to meet the *Parkhurst* standard.

■ Count III, however, is fatally defective. The count begins by citing the statute, § 455.085. That section prohibits violating an order of protection in a number of different ways, including abuse, stalking, child custody or entrance upon premises of the victim. Abuse may be an assault, battery, coercion, harassment, or an attempt to commit any of such acts. It is readily apparent that the statutory citation alone gives the accused no idea what he did to precipitate the bringing of the charge so that a defense can be prepared. That deficiency might have been overcome by factual allegations. However, the offending conduct is not described as repeated acts of harassment but a single act of "Lingering near [Lorrie's] residence by parking in a vacant lot up the street from [the] residence and sitting in his truck." To qualify as harassment requires an allegation of a course of conduct involving a series of acts or more than one incident. Under no reasonable construction does count III charge the offense of which the defendant was convicted. Indeed, the facts asserted in count III fail to allege any offense, even under the very liberal *Parkhurst* standard.

## VI.

Defendant raises other challenges to the instructions, including the complaint of the

substitution of "lingering near" for the statutory words "lingering outside" as contained in the statute describing conduct that may amount to harassment. The same instructions will not be given on remand. This Court does not reach that issue.

The judgment is reversed and the cause remanded for new trial on count II.

All concur.