**Donna L. ABMEYER, et al., Respondents,**

v.

**STATE TAX COMMISSION, et al., Appellants.**

No. 80353.

Supreme Court of Missouri, En Banc.

Jan. 27, 1998.

Rehearing Denied Feb. 24, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Douglas E. Nelson, Asst. Attys. Gen., Jefferson City, for Appellants.

Stephen P. Sokoloff, Phillip M. Britt, Kennett, for Respondents.

WHITE, Judge.

Section 137.115.1(1) requires that "each county assessor shall appraise, equalize, and adjust the assessed valuation of all real property located within his county in accordance with a two-year assessment and equalization maintenance plan approved by the state tax commission." If the commission and the county cannot agree on a plan, "then the differences shall be submitted to the circuit court of the county involved for final resolu-

tion...."[1] "The decision of the circuit court may be appealed pursuant to chapter 621, RSMo."[2] Appellant, the State Tax Commission (STC) appeals directly from such a decision of the circuit court. Because the statute requires an appeal to the Administrative Hearing Commission, this Court is without jurisdiction to entertain this appeal, and it is, therefore, dismissed.

Respondents, the assessor and county commissioners of Dunklin County (the County), submitted a two-year assessment and equalization maintenance plan to the STC in December of 1995. As part of that plan, a local construction cost index, a figure by which the value of standard improvements to real property are normalized for local construction costs, was calculated. The County's plan calculated the index to be 1.40. The STC refused to approve the plan because it held that the proposed index was too low, and that 1.70 was the proper figure. The parties did not resolve this dispute within thirty days, and respondents petitioned the circuit court to resolve the differences. The court, after hearing evidence, found that the proper cost index was 1.56. The STC appealed, and the Court of Appeals, Southern District, issued an opinion dismissing the appeal, but transferred the case to this Court.

First, we consider whether this Court has jurisdiction over this appeal.[3] The right to appeal from a circuit court judgment is purely statutory, and where there is no appeal authorized by statute, the appellate court has jurisdiction only to enter an order dismissing the appeal.[4] Section 137.115 provides that the decision of a circuit court resolving the differences between the STC and the County "may be appealed pursuant to chapter 621, RSMo." Chapter 621 governs procedure before the Administrative Hearing Commission (AHC). Granting the AHC the power to review judicial acts of the circuit court would be highly dubious in light of this Court's holding that the AHC may not exercise "purely judicial" powers.[5] Missouri courts have recognized, however, that the legislature has, occasionally, invested circuit courts with non-judicial, administrative functions.[6] The statutory language in this case suggests that the legislature sought to delegate an administrative, rather than a judicial, function to the circuit court in section 137.115.1.[7] The AHC was created as "an adjunct executive agency to exercise independent and impartial decisionmaking authority in disputes between agencies and those persons affected by their actions."[8] Thus, to the degree that section 137.115 specifies that review of the circuit court's decision lies under the law dealing with AHC proceedings, it is highly suggestive that the legislature intended that the trial court act in an administrative, rather than a judicial capacity. Also supporting that impression is the fact that the statute refers to the court's action as a "final resolution" of the "differences" between the parties, and as a "decision," rather than the

1. Section 137.115.1(1), RSMo 1994.

2. *Id.*

3. *See Alumax Foils, Inc. v. City of St. Louis*, 939 S.W.2d 907, 910 (Mo. banc 1997) ("In every case it is incumbent on the Court to determine its jurisdiction before reaching the merits of an appeal.").

4. *Farinella v. Croft*, 922 S.W.2d 755, 756, 757–58 (Mo. banc 1996).

5. *State Tax Comm'n v. Admin. Hearing Comm'n*, 641 S.W.2d 69, 75 (Mo. banc 1982).

6. *Shawnee Bend Spec. Rd. Dist. v. Camden County*, 839 S.W.2d 343, 347 (Mo.App.1992) (holding section 49.220's requirement that the circuit court sit as county commission in cases where a majority of commissioners are interested in the outcome of a proceeding confers an administrative, rather than judicial function on the circuit court). *See also State ex rel. Dietrich v. Daues*, 287 S.W. 430, 431 (Mo. banc 1926) (holding statute authorizing county court to set salary of county treasurer was not judicial in nature, but instead was legislative delegation based on the fact that county court was "the agency most familiar with the fiscal affairs and financial condition of the county").

7. The question of whether, and to what extent, the legislature may, consistent with the principle of separation of powers, delegate administrative functions to the judicial department has neither been raised nor briefed by the parties in this case. Since we find that this Court lacks jurisdiction to consider this appeal, we do not pass, at this time, on the constitutionality of section 137.115.1.

8. *State Tax Comm'n*, 641 S.W.2d at 75.

more natural term in this context, "judgment."

Section 512.020 depends on the entry of a final judgment to confer jurisdiction upon an appellate court: "Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not ... clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction from any ... final judgment." In the few instances where Missouri appellate courts have considered the matter, they have found that statutes conferring appellate jurisdiction based upon the "judgment" of a court were not implicated by the actions of a court acting in a non-judicial administrative capacity.[9]

Even more problematic, however, is the fact that the statute directs appeal from the trial court to proceed pursuant to chapter 621. Section 512.020 only confers jurisdiction where "appeal is not ... clearly limited in special statutory proceedings." In interpreting this section, this Court has held that, where a separate appeals process is specified by law, the general provision contained in section 512.020 is inapplicable.[10] This is the case even where, as here, the authorization for the separate appeals process is couched in permissive, rather than mandatory, language.[11] Since section 137.115 specifies the proper course from which an appeal of the circuit court's decision may be taken, no power is conferred on this Court by section 512.020 to consider this appeal.

Because this Court currently lacks jurisdiction over this appeal, it is hereby dismissed.

COVINGTON, J., concurs.

ROBERTSON, J., concurs in separate opinion filed.

LIMBAUGH, J., concurs and concurs in opinion of ROBERTSON, J.

HOLSTEIN J., dissents in separate opinion filed.

BENTON, C.J., and PRICE, J., concur in opinion of HOLSTEIN, J.

ROBERTSON, Judge, concurring.

I concur in the principal opinion. I write separately to express the rationale that I believe supports the principal opinion a bit more fully.

The difficult and politically-sensitive task of assessing and taxing real and personal property within a county lies at the heart of this case. This Court's decision in *State ex rel. Cassilly v. Riney*, 576 S.W.2d 325 (Mo. banc 1979), placed in the state tax commission the first opportunity to "resolve the assessment problem in St. Louis County," *id* at 328, that resulted because "local officials are not performing their duties." *Id.* at 329 (Seiler, J., concurring in part and dissenting in part).

*Cassilly*, and common sense, guided the legislature to conclude that conflicts between the locally-elected county assessing and taxing authorities that approve an assessment maintenance plan upon which local taxes are levied on the one hand, and a gubernatorially-appointed state tax commission charged with the duty of equalizing the valuation of each class of property "among the respective counties of the state," section 138.390.2, RSMo 1994, on the other, were inevitable. To resolve those conflicts, the legislature adopted a plan for resolution. Section 137.115.1, RSMo 1994. That statute attempts to establish a streamlined procedure to resolve differences between the county governing body and the state tax commission that, if not resolved, threaten to thwart Missouri's constitutional commitment to property tax equalization. Mo. Const. art. X, sec. 3.

9. *State ex rel. Dietrich,* 287 S.W. at 431; *Shawnee Bend,* 839 S.W.2d at 347.

10. *J.I.S. v. Waldon,* 791 S.W.2d 379, 379 (Mo. banc 1990) (dismissing appeal from circuit filed under section 512.020 and holding juvenile court appeals process described in section 211.261 applied).

11. *Id.* at 379 (although special statutory section dealing with appeals from juvenile court specified only that an appeal *may* be taken on behalf of the juvenile by the custodian or by the parent, the county juvenile officer could not resort to section 512.020 to confer jurisdiction on appeal).

The statutory language causing all the consternation in this case says:

[I]f the state tax commission and the assessor and the governing body of the county involved are unable to resolve the differences within an additional thirty days, then the differences shall be submitted to the circuit court of the county involved for *final resolution* within an additional thirty days. The *decision* of the circuit court may be appealed pursuant to chapter 621, RSMo....

Section 137.115.1, RSMo 1994. (Emphasis added.) The statute does not contemplate a judicial proceeding. The words "final resolution" and "decision" are not words associated with circuit court proceedings. At the initial dispute resolution stage, they are words associated with conclusions reached by administrative tribunals. Circuit courts, when acting as trial courts, enter judgments and provide orders to enforce their judgments. Rule 74.01. The statutory language suggests, therefore, that the legislature intended the circuit court to serve an administrative function when resolving disputes over assessment maintenance plans pursuant to section 137.115.1—to choose between the disagreeing parties and enter a decision that becomes the county commission's decision for purposes of appeal. To repeat: This is an administrative function, not a judicial one.

Respondents in this case contend that this statute violates article V, section 3 of the state constitution. No one raised the constitutional issue in the circuit court. Indeed, respondents raised the constitutional claim on appeal *in support of* their position that the circuit court decision was correct. Respondents hold this position despite the fact that they invoked the circuit court's authority under section 137.115.1 in the papers they filed with the circuit court. Their position on appeal has the virtue of creativity unfettered by internal consistency. We need not deal with respondents' constitutional claim in this case, however. Constitutional challenges cannot be raised for the first time on appeal.

Despite the careful language contained in section 137.115.1, the parties and the circuit court essentially ignored the statute and proceeded on the assumption that the circuit court was acting as a trial court, not performing the administrative function contemplated by section 137.115.1. The case began when respondents filed a "petition for resolution of differences on two-year assessment maintenance plan." This commenced a civil action. Rule 53.01. Although the petition invoked section 137.115, it followed the fact-pleading required by Rule 55.05. Its prayer asked the circuit court "to order the State Tax Commission to approve the ... Plan submitted by the County Assessor and approved by the County governing body." Rule 55.05. The State Tax Commission filed an answer. Rule 55.01. The answer included a claim that respondents' "petition failed to state a claim upon which relief may be granted and therefore should be dismissed." Rule 55.27(6). The State Tax Commission also filed a motion for summary judgment. Rule 74.04. The circuit court entered a judgment, not a final resolution. Rule 74.01. It designated the judgment as "a final judgment for purposes of appeal pursuant to relevant Missouri Supreme Court Rules." Rule 74.01(b). Neither party objected, even though section 137.115.1 could not be more clear in stating that appeal from the circuit court's "decision" is to the Administrative Hearing Commission pursuant to chapter 621.

We are left with the unenviable task of finding a way through this legal maze. The three judges of the court of appeals who heard this case each wrote a separate opinion espousing a different theory.

The decisional matrix the statute and these facts produce offers three choices. First, we can decide that section 137.115.1 is the exclusive method for resolving disputes between the state tax commission and a county commission on assessment maintenance plan issues. If that is the choice, two options are possible: First, we can conclude that the statute means what it says and that the circuit court's judgment in this case was a "final resolution" within the meaning of the statute. Appeal lies with the Administrative Hearing Commission under chapter 621. Under this reading of section 137.115.1, the statute acts as an additional grant of authority in the Administrative Hearing Commission

to hear appeals from the "final resolution" of the circuit court. Absent some decision to resolve the dispute between the state tax commission and the county commission, there would be nothing for the Administrative Hearing Commission to review.[1]

Second, the choice that section 137.115.1 is exclusive alternatively permits us to conclude that the circuit court's failure to do what section 137.115.1 suggests renders the circuit court's ruling in this case a nullity because the circuit court had not authority to proceed as it did. Absent authority to proceed, the circuit court could not act.

Both of the first two options result in dismissing the appeal. The former arrives at that conclusion because the appeal should have been taken in accordance with chapter 621. The latter results in dismissal because there is noting to appeal—either to the Administrative Hearing Commission or to the court of appeals—because the petition filed by the county commission in this case did not properly invoke the jurisdiction of the circuit court.

The third option is available only if one concludes that section 137.115.1 is not the exclusive method by which a dispute between the state tax commission and county authorities over an assessment maintenance plan can be resolved. Generally, a declaratory judgment action is available "in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove uncertainty." Section 527.050, RSMo 1994. Appeal from a declaratory judgment entered by a circuit court lies with the court of appeals. Mo. Const. art. V, sec. 3; section 512.020, RSMo 1994. If this third option is correct, the circuit court may indeed have entered a judgment and appeal goes to the court of appeals.

To adopt this option, however, one must ignore the fact that no party sought a declaratory action from the circuit court.

In deciding this case, it is easy for judges to react viscerally and negatively to a statute that permits review of circuit court actions by the Administrative Hearing Commission. For judges, this seems to violate some immutable rule of the judicial universe—it makes review of decisions flow in the wrong direction. But whether such a system of review is constitutional under articles II or V is not before us. The constitutional attack in this case is too late (as to article V) and misdirected (because no article II challenge is raised). Given an appropriately raised constitutional challenge to section 137.115.1, it is at least arguable that section 137.115.1 violates separation of powers. As I say, however, there is no constitutional case before us.

The proper question in this case is *not* whether appeal from the circuit court's decision may go to the Administrative Hearing Commission. With the constitutional question not properly raised and the appropriate direction for an appeal in this case not before us, we are left with two different questions: First, what did the circuit court have authority to do in this case? Second, what did the circuit court actually do?

As to the first question, I believe section 137.115.1 establishes an exclusive procedure for resolving assessment maintenance disputes between the state tax commission and the county authorities. It authorizes the circuit court to provide a "final resolution" of the dispute. I believe the statute's careful language purposely avoids the use of the word judgment because that word would permit an appeal under section 512.020. Section

---

1. Chapter 621 gives the Administrative Hearing Commission authority in three classes of cases. First, the Administrative Hearing Commission may hear professional license sanction cases arising from agencies listed in section 621.045, RSMo 1994. This case is not about a professional license. Neither the state tax commission nor the county commission are among the agencies listed in section 621.045. Second, the Administrative Hearing Commission may hear appeals from decisions of the director of revenue. Section 621.050, RSMo 1994. This case does not involve a decision of the director of revenue. Third, the Administrative Hearing Commission may issue decisions "in those cases involving complaints filed pursuant to chapter 536.050, RSMo [1994]." Section 536.050 permits declaratory judgment actions in the Administrative Hearing Commission on questions involving the validity of administrative rules promulgated by a state agency. This case does not involve the validity of rule promulgated by the state tax commission.

512.020 cannot apply to a section 137.115.1 "decision" because section 512.020 applies to judgments, not final resolutions or decisions.

This leads us to the second question. What did the circuit court actually do? I believe the petition filed did not permit the circuit court to enter a judgment. The petition did not claim to be a petition for declaratory judgment. Instead, it clearly invoked the circuit court's authority under section 137.115.1. No matter how improperly styled, the circuit court's conclusion in this case could be no more than an administrative announcement of a final resolution of the dispute between the state tax commission and the county authorities. Under those circumstances, appeal is to the Administrative Hearing Commission.

As does the principal opinion, I would dismiss the appeal in this case.

HOLSTEIN, Judge, dissenting.

I respectfully dissent. I disagree with the conclusion in the principal opinion that the general appeal provision of sec. 512.020 does not provide a right of appeal in this case. This section provides a right of appeal from "any judgment of any trial court in any civil cause" unless the right of appeal is "clearly limited in special statutory proceedings." Sec. 512.020.[1] I do not agree with the conclusion that sec. 137.115.1 clearly limits the right of appeal. This section provides that the decision of the circuit court resolving differences between the STC and the County "*may* be appealed pursuant to chapter 621, RSMo." Sec. 137.115.1 (emphasis added). This section is purely permissive and contains absolutely no language of limitation, much less language "clearly" limiting the manner of appeal.

The quoted portion of sec. 137.115.1 is clear only in that the legislature intended the parties to have a right to appeal. Beyond that, what was intended becomes fuzzy. The phrase in sec. 137.115.1 "may be appealed pursuant to chapter 621" is confusing. It can be read either of two ways: 1) "may be appealed [to the AHC] pursuant to chapter 621" or 2) "may be appealed [as are AHC decisions] pursuant to chapter 621." Assuming, as does the principal opinion, that the legislature intended the first construction, a reading of chapter 621 merely compounds the confusion as to what was intended. Chapter 621 does not provide the AHC with broad powers to review administrative decisions or a general procedure to follow in conducting its review, as is implied by the principal opinion. The AHC is only empowered to hear and decide three types of administrative decisions, none of which is a "final resolution" or "decision" of the circuit court pursuant to chapter 137. *See secs. 621.050* (authorizing AHC review of decisions of the director of revenue); *621.055* (authorizing AHC review of certain decisions of the Department of Social Services); and *621.155* (authorizing the AHC to hear certain challenges to administrative rules). These same sections specify the procedure the AHC is to follow. Because AHC review of a decision of a circuit court under sec. 137.115.1 does not fit into any of these three categories, one can only speculate as to what authority the AHC may have to review the circuit court's decision and in doing so, what procedures are applicable.

Assuming the legislature intended the second construction, the route of judicial review of a "final decision" of the AHC differs depending on which of the three types of administrative decision is under consideration. In one circumstance, judicial review of the AHC's decision is accomplished by petitioning the circuit court. *Secs. 621.145* and *536.110.* In the other two circumstances, judicial review of an AHC decision goes directly to the appropriate appellate court. *Sec. 621.189.* The statute is silent as to which procedure is to be followed here.

Under no circumstance do I think the legislature intended that the procedure to appeal a final decision of the circuit court "pursuant to chapter 621" is "clearly limited" to the absurd procedure of requiring a rehearing of the circuit court case before the AHC or the even more bizarre re-review of the AHC decision by a circuit court, this time acting in its "judicial" capacity. We should not assume that the legislature intended an

1. All statutory references are to RSMO 1994 unless otherwise indicated.

absurd result. *See State v. Schleiermacher,* 924 S.W.2d 269, 276 (Mo. banc 1996). The only thing clear about sec. 137.115.1 is that the legislature intended that the parties have a right to appeal. Ironically, the principal opinion concedes that the "highly dubious" constitutionality of its interpretation of sec. 137.115.1 may well strip away any right to appeal.

The majority and Judge Robertson, in his concurring opinion, correctly point out that the parties did not directly challenge the constitutionality of sec. 137.115.1 before the circuit court and have not preserved that issue for appeal. However, both acknowledge that their construction of the statute would likely be held unconstitutional. This Court is called upon to construe an admittedly ambiguous sec. 137.115.1. In performing that duty, it is appropriate to rely on all applicable canons of statutory construction. Among those is the rule that this Court should avoid interpretations that would render a statute unconstitutional. *See Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 839 (Mo. banc 1991). The application of this rule requires this Court to consider obvious constitutional questions raised by each proposed construction of the statute. No authority is cited or found requiring this Court to turn a blind eye to an applicable canon of statutory construction merely because it was not argued before a trial judge.

The holding of *J.I.S. v. Waldon* is not quite as sweeping as suggested by the principal opinion. There the Court was unwilling to look outside sec. 211.261 of the juvenile code to find statutory authority for the juvenile officer's appeal. Underlying the Court's reluctance to venture outside the juvenile code was precedent holding that the juvenile code is a "complete law within itself." *J.I.S. v. Waldon,* 791 S.W.2d 379, 381 (Mo. banc 1990) (Robertson, J., concurring) (quoting *In re C.,* 314 S.W.2d 756, 759 (Mo.App.1958)); *see also In re Beste,* 515 S.W.2d 530, 531 (Mo.1974) (holding that because the juvenile code "is a complete act or law within itself," any appeal under the juvenile code must comply with the appeal provision of that code, sec. 211.261). Because the juvenile code is complete in and of itself, "resort to general statutes address-

ing the same subject is not permitted." 791 S.W.2d at 381 (Robertson, J., concurring). The rationale and holding of *J.I.S.* does not control here because sec. 137.115.1 is certainly not part of a "complete" or a self-contained code, such as the juvenile code.

The majority's expansive reading of *J.I.S.* deletes the phrase *"clearly limited* in *special* statutory proceedings" from sec. 512.020 and substitutes the phrase *"provided for* in *any* statutory proceedings." Such reading is contrary to the plain meaning of sec. 512.020.

Finally, I disagree with the principal opinion's conclusion that in rendering its judgment the circuit court was not acting in a judicial capacity, but only in an administrative capacity. Section 137.115.1 does not state that the court in rendering its decision is to act only in an administrative capacity. Unlike the statute in *Shawnee Bend Special Road District v. Camden County,* 839 S.W.2d 343 (Mo.App.1992), sec. 137.115.1 contains no language directing the court to act as an administrative agency. Nonetheless, the principal opinion reads such provision into the statutes. Here the circuit court entered a judgment pursuant to a statute that submits a dispute between two adverse parties to the court "for final resolution" by way of a "decision." *Sec. 137.115.1.* The word "decision" is not limited to an administrative determination, but is "a comprehensive term" encompassing "a judgment, decree, or order pronounced by a court in settlement of a controversy...." *Black's Law Dictionary* 407 (6th ed.1990). Unlike the principal opinion, I would hold that in the absence of express statutory language to the contrary, when a court is called upon to resolve a dispute not involving court administration, it is presumed to be acting within its constitutional judicial powers. *See Mo. Const. art. V, sec. 1; art. II, sec. 1.* A final decision declaring the rights of the parties and characterized as a judgment should be appealable under sec. 512.020.