**Michael D. BLACKMON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 64283.**

Missouri Court of Appeals,
Western District.

Aug. 2, 2005.

Jeannie Marie Willibey, Appellate Defender Office, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Deborah Daniels and Evan J. Buchheim, Office of Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Michael Blackmon appeals the denial of his Rule 29.15 motion for post-conviction relief after evidentiary hearing. He claims (1) that his trial counsel was ineffective for failing to object to an allegedly erroneous jury instruction, and (2) that his appellate counsel was ineffective for failing to raise on appeal a plain error argument that the trial court erred in submitting the instruction. Blackmon has failed to show, as he must in order to prevail, that the trial court's findings of fact and conclusions of law are clearly erroneous. Affirmed.

## Facts

Michael Blackmon was charged as a prior and persistent offender with one count of the class D felony of violation of an order of protection, second offense, Section 455.085.8, RSMo 1994. His case was tried before a jury on September 27 and 28, 1999. The following evidence was adduced at trial:

Wyonna Sullivan and Michael Blackmon were married for sixteen months during 1994 and 1995 over which time she endured verbal and physical abuse when he punched, slapped, and threw chairs and other objects at her. As a result of the abuse, Sullivan received injuries requiring medical attention. Sullivan divorced Blackmon and eventually received a full order of protection against him. After Sullivan received the order of protection Blackmon continued to page her, call her, and threaten her. He came to her work at Truman Medical Center and also went to her house where he verbally abused her.

In March of 1995, Sullivan returned to court to renew the order of protection. Blackmon was present at the hearing and he agreed to the terms of the order. After the court proceeding, however, Blackmon confronted Sullivan outside and told her, "I don't care what no white man say. You're my wife." He then tore up the order of protection in the middle of the street and began to follow Sullivan to her car. She was able to alert a security officer and Blackmon was escorted away.

On January 22, 1998, Sullivan obtained a full order of protection, which was effective for one year and prohibited Blackmon

from abusing her. Blackmon was served with the order of protection on April 4, 1998.

Blackmon was in prison for approximately three years until March of 1998 for violating various orders of protection obtained by Sullivan. While in prison Blackmon contacted Sullivan once at work and told her that he was on his way up there and that the she should "watch [her] back." By March of 1998, Sullivan had remarried and was living with her husband and her children. During that month, Blackmon again contacted her while she was home at night. Blackmon called and said, "Watch your back. I'm outside your door. Come see. I'm in the backyard." After the phone call, Sullivan also received pages from the phone of Blackmon's brother. She became so afraid of Blackmon that she changed her address but decided to keep the same pager number so she could have advance warning of Blackmon's desire to contact her.

Sometime during the night of October 13, 1998, or the early morning of October 14, 1998, Sullivan received three or four pages from the phone of Blackmon's brother. The next morning, at approximately 7:30 A.M., a Truman Medical Center employee named Michael Tindall saw Blackmon on the third floor of the Medical Center. Tindall asked Blackmon to leave but Blackmon told Tindall that he had paged someone and was waiting for the return call. Tindall told Blackmon that he could wait by the phone but Blackmon eventually left before it rang. At approximately the same time, Sullivan received a page from a prefix that indicated the call originated from Truman Medical Center. When Sullivan arrived at work she notified a security officer that she believed she had received a page from Blackmon and that he was in the building. The security officer called the number from Sullivan's pag-

er and it rang the phone Blackmon had been standing next to moments earlier. Tindall answered the call and gave the officer a description of Blackmon.

At approximately 8:00 A.M. Blackmon went to the main lobby of Truman Medical Center and asked to use the courtesy phone. The front desk attendant, Lane Burch, watched Blackmon make a call. Blackmon asked Burch if he could receive incoming calls and she told him he could not but directed him to a pay phone.

On another floor of the medical center, Lisa Torrence–Hughes had arrived at her office that had once belonged to Sullivan when she was married to Blackmon. Torrence–Hughes received a phone call from a man asking to speak to Sullivan. The man insisted on speaking to Sullivan and told Torrence–Hughes to "tell her that Michael called. I'm in the building, and I am trying to find her." Torrence–Hughes then called Sullivan and security to inform them about the call.

Blackmon was eventually confronted by Truman Medical Center security. Blackmon told the officers that he had been in the emergency room for a heart condition, but the officers checked and the emergency room had no record of treating Blackmon that morning. Kansas City police officers eventually arrived at approximately 8:30 A.M. and Blackmon was later arrested when the police verified that a full order of protection existed against him. Sullivan received six pages that morning. Later in the day, she was seen shaking and crying.

Blackmon did not present evidence at trial. At the close of evidence and argument, the jury found him guilty as charged. On December 2, 1999, Blackmon was sentenced as a prior and persistent offender to ten years imprisonment. His conviction and sentence were affirmed on

May 1, 2001. *State v. Blackmon,* 44 S.W.3d 443 (Mo.App.2001).

Blackmon filed a *pro se* motion for post-conviction relief on May 29, 2001, and filed his amended motion on September 10, 2001. The motion court denied his motion, but this court remanded the case back to the motion court with directions to make findings of fact and conclusions of law. *Blackmon v. State,* 102 S.W.3d 90 (Mo. App.2003).

An evidentiary hearing was held on May 23, 2003, during which Blackmon testified. On April 16, 2004, the motion court filed findings of fact and conclusions of law overruling Blackmon's motion.

## Standard of Review

■ In reviewing the denial of a post-conviction relief motion, the appellate court is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Reynolds v. State,* 87 S.W.3d 381, 383 (Mo.App.2002). The motion court's determinations are clearly erroneous only if, after review of the entire record, the appellate court is left with definite impression that a mistake has been made. *Id.*

To prove that counsel was ineffective, a movant must show that counsel's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney" and that movant was thereby prejudiced. *Barnett v. State,* 103 S.W.3d 765, 768 (Mo. banc 2003) (citations omitted). Should the movant fail to satisfy either prong, ineffective assistance or prejudice, the appellate court on review need not consider the other. *Haskett v. State,* 152 S.W.3d 906, 909 (Mo.App.2005). To establish that his attorney's performance was deficient, the movant "must overcome the presumptions that any challenged action was sound trial strategy and that

counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *State v. Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997). To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Barnett,* 103 S.W.3d at 768–69.

## Ineffective Assistance of Trial Counsel

■ Blackmon alleges in Point II that his trial counsel was ineffective in failing to object to the verdict director given at his trial. Blackmon claims that the verdict director used was deficient because it "failed to set forth the specific course of conduct, involving more than one incident, committed by [Blackmon], which constituted 'abuse by harassment.'" The verdict director at issue reads as follows:

### INSTRUCTION NO. 5

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 22, 1998, the Circuit Court of Jackson County entered an order prohibiting defendant from abusing Wyonna Sullivan, and

Second, that on April 4, 1998, defendant had been served with the order, and

Third, that on or about October 14, 1998, in the County of Jackson, State of Missouri, the defendant violated that order by abusing Wyonna Sullivan by harassing,

Then you will find the defendant guilty of violation of order of protection.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "harassing" means engaging in a purposeful or knowing course of conduct that alarms or causes distress to another adult and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult to suffer substantial emotional distress and must actually cause substantial emotional distress to Wyonna Sullivan.

Blackmon concedes, as the hearing court found, that the verdict director used was in compliance with the applicable Missouri Approved Criminal Instructions at the time. MAI–Cr 3d 332.52. Nevertheless, Blackmon asserts that he was prejudiced because the verdict director allowed the jury to convict him based upon less evidence than what was required by law. He hypothesizes that, as a result of the wording of the instruction, the jury may have convicted him of violating the protective order on the basis of only one harassing act.

Blackmon's argument is founded entirely upon the decision in *State v. Schleiermacher*, 924 S.W.2d 269 (Mo. banc 1996), where the Supreme Court held that the jury instructions used were deficient because they put forward only a single incident of conduct where multiple incidents were required to support a conviction. *Id.* at 274–75. *Schleiermacher* was a direct appeal alleging trial court error, not ineffective assistance of counsel. The instruction used in Blackmon's trial was drafted after *Schleiermacher* and appears to address many of the issues decided in that case. Blackmon correctly argues that even an instruction that complies with MAI–CR 3d should not be given if it conflicts with the substantive law. *State v. Blue*, 991 S.W.2d 716, 717 (Mo.App.1999).

We need not determine whether trial counsel was ineffective, however, because it is clear that Blackmon was not preju-

diced. As mentioned, Blackmon must show both prongs, ineffectiveness and prejudice, in order to prevail in this appeal from the denial of his post-conviction motion. *Barnett*, 103 S.W.3d at 768. There is no reasonable probability that, but for his trial counsel's failure to object to the instruction, he would not have been found guilty. The evidence admitted before the jury revealed a number of different harassing acts allegedly committed by Blackmon, any two of which could have formed the basis of his conviction. Late on October 13, 1998, or early on October 14, he paged Ms. Sullivan three to four times. He then paged her six times the following morning and came to her workplace at Truman Medical Center searching for her. He also called Ms. Sullivan's former office at the Medical Center and left a message that he was in the building looking for her.

The State argues that any defect in the instruction was cured when the prosecutor made comments during closing argument instructing the jury that the words "course of conduct" from the instruction meant more than one incident. The relevant comments were as follows:

There's no magic number to it. It's not like the law says if you contact her four times then you're guilty or if you contact her two you're not. That's what you are here for.

Course of conduct, that can be two things, three, four, five, six, nine. That's enough. That's enough numbers to qualify for harassment under the law that you're being given under by the court.

When read in context with the evidence admitted, the prosecutor's comments remove any alleged prejudice that may have resulted from trial counsel's failure to object to the approved instruction. The prosecutor's statements unambiguously directed the jury that they needed to find

that more than one incident of harassment occurred in order to convict.

■ Similarly, we find unpersuasive Blackmon's allegation that we must reverse because the motion court's findings erroneously recite post-conviction counsel's true argument. Generally, a trial court's judgment will be sustained if it reaches a correct result even if its findings are erroneous. *State v. Hanners,* 827 S.W.2d 273, 275 (Mo.App.1992); *Mercer v. State,* 666 S.W.2d 942, 947 (Mo.App.1984).

Given the comments by the prosecutor, the substantial evidence of guilt, and the limited scope of our review, we find no reason to disturb the decision of the motion court. Blackmon was not prejudiced by trial counsel's inaction and, therefore, the motion court's findings of fact and conclusions of law are not clearly erroneous. Point denied.

### Ineffective Assistance of Appellate Counsel

Blackmon argues in Point I that his appellate counsel was ineffective for failing to assert on appeal that the trial court plainly erred in submitting the verdict director discussed above. Blackmon claims that if appellate counsel had raised the issue, this court would have reversed his conviction and sentence and remanded the case for a new trial. We disagree.

■ The right to relief due to ineffective assistance of appellate counsel has been consistently described as "inevitably track[ing] the plain error rule; i.e., the error that was not raised on appeal was so substantial as to amount to manifest injustice or a miscarriage of justice." *Kluck v. State,* 30 S.W.3d 872, 878 (Mo.App.2000). In this case, Blackmon alleges that his appellate counsel's ineffectiveness in failing to raise a claim of manifest injustice on direct appeal resulted in manifest injustice.

"An attorney will not be found ineffective for failing to raise an unpreserved error on appeal." *Sanfilippo v. State,* 143 S.W.3d 765, 769 (Mo.App.2004).

■ Finally, even if we accept Blackmon's contention that appellate counsel should have raised this issue on direct appeal, we would reach the same result because, had it been raised, it would not have required reversal. Reversal on plain error grounds requires a finding that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice resulted. *State v. Dillard,* 158 S.W.3d 291, 299 (Mo.App. 2005). Having found above that the submitting of the instruction resulted in no prejudice, it follows that a miscarriage of justice did not result either. *See Aaron v. State,* 81 S.W.3d 682, 697–98 (Mo.App. 2002) (movant's allegations of plain error would not have been successful on appeal, so movant suffered no prejudice from appellate counsel's failure to raise them). Point denied.

The judgment is affirmed.

ROBERT G. ULRICH, Judge, and JOSEPH M. ELLIS, Judge, concur.